# McNeely, Appellant, v. Bookmyer.

*Contract—Agreement to repurchase stock—Price not fixed.*

1. An agreement to repurchase shares of stock sold by one person to another, cannot be enforced where no price is fixed at which the shares are to be repurchased.

2. An alleged agreement to repurchase stock, if the purchaser is dissatisfied with it, cannot be enforced, where it appears that the agreement was denied by the seller, that for four years the purchaser never asked for a repurchase, and in various letters requested the seller to aid him in disposing of it.

Argued December 7, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 312, Jan. T., 1927, by plaintiff, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1925, No. 1572, for defendant n. o. v., in case of C. Wilson McNeely v. Edwin A. Bookmyer. Affirmed.

Assumpsit to recover back price of shares of stock under an agreement to repurchase. Before HENRY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $10,000. Judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was judgment, quoting record.

*Frederic L. Clark,* with him *Andrew R. McCown,* for appellant.—The agreement of defendant to buy back the stock was valid, and the amount to be paid was the purchase price, or $10,000: Laubach v. Laubach, 73 Pa. 387; Smethhurst v. Woolston, 5 W. & S. 106; Wilkinson v. Ferree, 24 Pa. 190; Crossgrove v. Himmelrich, 54 Pa. 203; Am. Life Ins. Co. v. McAden, 109 Pa. 399; Roberts v. Cauffiel, 6 Pa. D. & C. 706.

Whether plaintiff elected within a reasonable time to rescind the contract of sale is a question for the jury and not of law; and plaintiff is not estopped as a matter of law from rescinding: Porter v. Patterson, 15 Pa. 229; Forsyth v. Oil Co., 53 Pa. 168; Portland Ice Co. v. Connor, 32 Pa. Superior Ct. 428; Knights of Joseph B. & L. Assn. v. Ins. Co., 66 Pa. Superior Ct. 90; Renick & Brand v. Aronoff, 76 Pa. Superior Ct. 206.

*W. Horace Hepburn, Jr.,* for appellee.—The alleged contract was not enforceable as no price was fixed: Butler v. Kemmerer, 218 Pa. 242; Briggs v. Morris, 244 Pa. 139.

When the facts are not disputed the question of an unreasonable delay is one of law: Morgan v. McKee, 77 Pa. 228; Leaming v. Wise, 73 Pa. 173.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1928:

This action was brought to recover from defendant the price plaintiff paid for 100 shares of the capital stock of a corporation. The basis of the claim was the alleged oral agreement of defendant to repurchase the stock in the event of plaintiff's dissatisfaction with it. The trial resulted in a verdict for plaintiff, which the court below set aside and entered judgment for defendant; plaintiff appeals.

The parties were travellers on a train from New York a few days prior to June 27, 1921, and in the course of their conversation defendant informed plaintiff that he had the opportunity to subscribe to $50,000 par value of the stock of Shubert Advanced Vaudeville, Inc., and that the amount was larger than he cared to acquire. It was suggested that plaintiff take over the subscription to $10,000 of the stock. Plaintiff testified that he told defendant before leaving the train that he would think the matter over and that two or three days thereafter defendant came to his office and it was arranged that plaintiff should take the $10,000 of the stock, say-

ing, so plaintiff testified, "that if at any time I wasn't satisfied he would buy the stock back from me," on the strength of which statement plaintiff says he agreed to buy the stock and subsequently paid the subscription. Defendant denied that he agreed to repurchase. On June 27, 1921, plaintiff wrote to defendant enclosing a check for $2,500 on account of his subscription to the stock, in which he referred to their conversation on the train, but said nothing about defendant's agreement to repurchase if the stock was not satisfactory. Subsequently extending over a period of several months, defendant made three other payments of $2,500 each on account of his subscription, saying nothing about the alleged agreement of repurchase. Two years after the time when he agreed to take the stock, on July 9, 1923, plaintiff wrote defendant saying that he had been trying to get some information in regard to the company but had not succeeded and inquiring "whether you know where I can dispose of my stock in the Shubert Co." In September plaintiff again wrote defendant expressing the desire to dispose of the stock "and would like to know if you can help me out in doing this." In October, 1923, plaintiff again wrote defendant saying that he could not get any information about the enterprise and "I will be compelled to put same in the hands of my attorney, which I certainly do not want to do, and trust that you will help me out in this matter." It is most significant, in view of the claim subsequently advanced that defendant was obligated to repurchase the stock, that nothing was said about it in this communication. Not until two years later, on October 24, 1925, just prior to suit, did plaintiff advance the claim of an agreement to repurchase and then in a self-serving letter he said that he had taken it upon the understanding that defendant would repurchase it at any time he desired to sell it back.

In the alleged agreement to repurchase, as plaintiff testified to its terms, there was nothing said about the

price to be paid for the stock by defendant. As was observed by the court below in its opinion, "In a contract to repurchase it is essential that the purchase price be agreed upon. In the absence of a named price, it is only expressive of a willingness to repurchase at a price to be fixed or agreed upon, and until such agreed-upon price is reached, there is no definite and binding contract to repurchase," to which we may add, "In order that a contract may be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite": Edgecomb v. Clough, 275 Pa. 90, 103. "Price is as essential as any other of the terms of a contract, and without this agreed upon no contract exists": Butler v. Kemmerer, 218 Pa. 242, 246. "The parties themselves must agree upon the material and necessary details of the bargain": Beaver v. Slane, 271 Pa. 317, 322. In our opinion no valid contract was entered into.

We also agree with the conclusion of the court below that if there had been a valid undertaking by defendant to take back the stock, plaintiff did not assert the right to have him do so within a reasonable time. He waited four years after acquiring it before calling on defendant to repurchase. Two years before, when he expressed dissatisfaction with the company, he did not so demand. In the letter written in October, 1923, in which the suggestion is made that he will place the matter in an attorney's hands and when he was very evidently displeased with his purchase, nothing was intimated about defendant's liability to take and pay for the stock. Then was the time for appellant to speak and call upon defendant to buy back if he had the right so to do. He could not wait for two years longer and, as the trial judge well says, "speculate with his contract and right to rescind, keeping defendant's liability open while at-

tempting otherwise to dispose of the stock" and then require him to take and pay for it.

To our mind the fatal weakness in plaintiff's case was in the letters which he wrote disclosing, as they do, his dissatisfaction with his bargain, but never a word as to the agreement which he set up in the last of them four years after acquiring the stock. Had there been such an undertaking as he now alleges, it is inconceivable that, instead of asking defendant to aid him in disposing of the stock, he would not have called upon him to make good his agreement to take it himself.

The judgment is affirmed.